# Haycraft et al. v. Commonwealth.

(Decided April 29, 1932.)

W. A. BARRY and J. E. WISE for appellants.

BAILEY P. WOOTTON, Attorney General, H. HAMILTON RICE, Assistant Attorney General, C. E. MORGAN, County Attorney, and ALLEN P. CUBBAGE, Commonwealth's Attorney, for Commonwealth.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN— Reversing.

On April 13, 1931, C. E. Morgan, the county attorney of Hardin county, while walking down Main street of Elizabethtown, observed a Tudor Ford sedan parked near the curb. On glancing through the windows, he saw in the rear of the automobile two slot machines. They were, in the main, covered by a thin spread, but their outline was plainly visible through the thin covering, and the little top plate peculiar to slot machines and which provides a receptacle in which the nickel which operates it is dropped was uncovered and plainly visible. In a few moments Morgan saw the appellants, Virgil Haycraft and Albert Carman, coming toward the automobile, and he informed them that he had observed that they had these slot machines in their car. The appellants admitted the possession of these slot machines, but stated that they did not purpose to operate them in Hardin county. Thereupon the county attorney got in touch with the sheriff and informed him about this matter. The sheriff arrested the appellants and seized the slot machines, which turned out to be of the gaming, as distinguished from the vending, type. The appellants

were thereupon indicted under section 1960 of the statutes, which in part provides:

> "That whoever, with or without compensation, shall set up, carry on, keep, manage, operate or conduct . . . a keno bank, faro bank or other machine or contrivance used in betting whereby money or other thing may be won or lost . . . shall be fined five hundred dollars ($500.00) and costs and confined in the penitentiary not less than one nor more than three years; shall be deemed infamous after conviction, and be forever thereafter disqualified from exercising the right of suffrage, and from holding any office of honor, trust or profit, whether it be state, county, city or municipal."

On their trial the commonwealth proved only that the slot machines were gaming devices, and had been found in the rear of the Ford automobile, and that the appellants admitted having possession of the machines, but disclaimed any intention of setting them up or operating them in Hardin county. The appellants introduced no proof, but stood on their motion for a peremptory instruction, which the court declined to give. The case being submitted to the jury, the appellants were found guilty of violating the statute, each fined $500, and each given one year in the penitentiary. They have appealed.

To sustain and support the judgment of conviction, the commonwealth relies on that portion of the statute above quoted where the word "keep" is used. It insists that the word "keep" in the statute is synonymous with "possession," and that, as the appellants admitted having possession of these machines, they kept them within the meaning of the word "keep" in the statutes.

On the other hand, the appellants, invoking the ejusdem generis doctrine, argue that the word "keep" in the statute means something more than mere possession, and carries with it the idea of maintaining and conducting for the purpose of betting. It will be observed that the word "keep" in the statute appears about midway of the phrase "shall set up, carry on, keep, manage, operate or conduct," all of the words of which, at least with the exception of "keep" imply something more than mere possession. The word "keep" may mean mere possession or it may mean to maintain or to attend or to

conduct or to carry on. Such is the use of the word in the phrase "one keeps house," and such is its use in the fifteenth verse of the second chapter of Genesis, which reads:

"And the Lord God took man and put him into the garden of Eden to dress it and to keep it."

We are of the opinion that the word "keep" in the statute means something more than mere possession, and that, taking it where we find it in the midst of the words "set up," "carry on," "manage," "operate," and "conduct," we must give to it the meaning of maintaining, attending, conducting, or carrying on. The evil sought to be remedied by the statute is that of gaming, and the means employed to abolish that evil is clearly the prohibition of setting up, maintaining, and operating gaming devices whereby money or other thing may be won or lost. The Legislature intended that the prohibition should go to something more than mere possession, and, although it did use the word "keep" in the statute, the juxtaposition of this word with the other words which imply something more than mere possession carries the conviction that the Legislature intended to use it with the meaning it has of maintaining or attending or conducting or carrying on.

In the early case of Commonwealth v. Burns, 4 J. J. Marsh. 177, there was presented for construction the meaning of the first section of the act of 1823, which in part reads: "That hereafter, if any person, or persons shall set up, or keep any gaming table, at which the game of Faro, Equality, or any other game of chance, shall be played for money or any other thing, or shall keep any bank, and shall induce or permit any person, or persons to bet any money, or any other thing against the said bank or game" shall be punished as the statute prescribed.

The opinion of the court was prepared and delivered by Chief Justice Robertson, who was perhaps peculiarly qualified (see his autobiography as quoted in the sketch of his life by Judge Samuel Mackay Wilson in volume IV, Great American Lawyers, p. 376) to discuss and ascertain the meaning of the statute. In holding that the Act of 1823 defined distinct offenses when it prohibited the "setting up" and "keeping" a gaming table, the court went at great elaboration into the question of what

is a "setting up" and "keeping" of a gaming table, and said:

"A man may set up a gaming table, without any table in a literal sense; or without having money or property to stake on the game, for his credit may be substituted. Simply setting out a table, or putting upon it, a pack of cards, would not be setting up a gaming table. . . . Even if a game be played, and he who sets up the table, and places on it the cards, participates in the game, and wins or loses money, he may not be guilty of having set up a gaming table; he may be a better against the bank. There must be a bank and a banker, or a gaming table, and a keeper of it. The bank is a fund of money or property, or credit, offered to be staked on all bets, which others may choose to make against the banker, on the game which he shall exhibit to entice bets. He, who employs such a fund, for such a purpose, thereby sets up a gaming table, whether he deals his cards on a table or a bench. And virtually, he keeps the bank or gaming table, although some other person may win in his absence, but at his instance deal the cards and manage the game for him. . . . In substance, and effect, therefore, the man who sets up a gaming table keeps a gaming table, e converso the person who keeps, may, in one sense be said to set up a gaming table pro haec vice. Therefore, there is much plausibility in the idea, that in using the words "shall set up or shall keep a gaming table" the legislature did not mean to designate distinct acts, but intended to be so explicit as to prevent evasion of their object. For example, if they had used only the words 'shall set up a gaming table,' one person might, in substance, set up a table and a different person might, in form, keep it. . . . A person may keep a gaming table who has no interest whatever in it. He may barely deal the cards for the real banker. Such a person could not, with propriety be considered as having set up the bank or gaming table according to the proper definition of that offense. But, by keeping the table or bank, and dealing the cards, one induces other persons to bet, and thereby occasions a breach of the law, and contributes to the mischief intended to be remedied. . . . *To*

*manage and control the table and deal the cards is to keep a Faro bank."* (Italics ours.)

It will thus be seen that the court in the Burns case gave to the word "keep" a meaning other than that of mere possession, and held that it implied the idea of maintaining, controlling, conducting, or carrying on. We have been cited to no case in this state since the Burns case at variance with the definition given to the word "keep" in it, and such seems to be the definition given this word in gaming statutes in other states, as may be seen from a reading of the cases of City of Mexico v. Harris, 115 Mo. App. 707, 92 S. W. 505, and Coleman v. State, 48 Tex. Cr. R. 202, 87 S. W. 152.

We are convinced that the definition given to the word "keep" in these gaming laws by our sister courts and by this court in the Burns case, supra, is correct and in accord with what the Legislature evidently intended by the language it employed in this statute, and, inasmuch as in the instant case there is nothing shown against the defendants beyond mere possession of these slot machines, and no proof that they intended to set up, manage, operate, or conduct them as gaming devices anywhere, the court should have peremptorily instructed the jury to find them not guilty.

The judgment is therefore reversed, with instructions to grant the appellants a new trial in conformity with this opinion.